IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEROY WILLIAMS,

    Petitioner,                               No. CIV S-01-1595 MCE DAD P

    vs.

ROSANNE CAMPBELL, et. al.,

    Respondents.                          FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with this habeas corpus action. Petitioner is in custody pursuant to a 1979 Los Angeles County conviction for first degree murder, for which he is serving a term of seven years to life in state prison. In this action petitioner challenges the decision of the California Board of Prison Terms on August 3, 2000, finding him not suitable for parole. Respondents' motion to dismiss the action for lack of subject matter jurisdiction was denied on March 10, 2003, and respondents filed an answer to the petition on March 20, 2003. Petitioner filed a traverse on May 21, 2003, and an amended traverse on August 12, 2003.[1]

/////

---

[1] A duplicate of the amended traverse was filed on September 9, 2003.

1

For the reasons set forth below, the undersigned will recommend that petitioner's application for a writ of habeas corpus be denied.

PETITIONER'S CLAIMS

Petitioner alleges that the Board's denial of a parole date at the subsequent parole consideration hearing conducted on August 3, 2000, violated his due process and equal protection rights. Petitioner appealed the Board's decision on September 14, 2000. After the appeal was denied on January 9, 2001, petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The habeas petition was denied on July 25, 2001.

Petitioner commenced this action by filing a habeas petition on a proper form. However, petitioner did not set forth his grounds for relief and supporting facts on the form. (Pet. at 4-5.) In a typed attachment, under the heading "Contentions," petitioner asserts, without supporting facts, that the Board's denial of a parole date violated his right to due process and equal protection of the law. (See Pet., Attach. at 4.) In a memorandum of points and authorities, petitioner offers arguments under the heading "Equal Protection." (Pet., Attach. at 6-11.) Petitioner contends that he was denied "many of the procedural protections that must be provided when a liberty interest is involved" and that the Board violated his equal protection rights by denying him a parole date "on a finding of suitability standard different than the finding of suitablility standard, which was in effect at the time petitioner committed his offense, applied to another inmate, Billy McIlvain, who was given a parole date in 1990 and released on or about 1991." (Id. at 6-7.)

Petitioner asserts that the Board's decision "makes little or no mention of any factors tending to show suitability of parole." (Id. at 7.) He argues that the Board failed to consider his age, then 51, or his remorse, both of which tend to show suitability for parole. Petitioner cites a 1999 psychiatric evaluation in which Dr. Beermann, a psychologist, states that petitioner "does feel remorseful for what he did" and finds a reduced probability of recidivism due to age. (Id.) Petitioner asserts that the Board considered remorse and age as favorable

factors when it found inmate Billy McIlvain, at age 46, suitable for parole and that the Board's decision in his own case was arbitrary because the Board did not consider those factors favorable for him. (Id.)

Petitioner argues that the Board incorrectly found his 1999 psychiatric report to be unfavorable despite the fact that Dr. Beermann's states that "no mental health treatment is indicated at this time," "Mr. Williams does not pose more than a normal risk factor in a controlled environment," and the inmate is cooperative and "would be a reasonable candidate for parole." (Id. at 8.) Petitioner argues that there is nothing in Dr. Beermann's report that is not supportive of his release and that the report is "remarkably similar" to two psychiatric reports considered and found favorable in McIlvain's case. (Id.) Petitioner also argues that the Board took notice of the fact that his classification score has been zero since 1989 but failed to consider that his classification score started out at 106. (Id.)

Petitioner states that the Board gave four reasons for finding that he was not suitable for parole and posed an unreasonable risk of danger to society: his crime was cruel and callous, he had a prior record, he had not sufficiently participated in beneficial self-help therapy, and he lacked realistic parole plans in that he did not have viable residential plans in the last county of legal residence and did not have acceptable employment plans. The Board commended him for his ten years of working in the bakery and receiving good reports, his GED in 1998, his work in electronics, and his participation in AA. Petitioner asserts that the Board's decision to deny a parole date was arbitrary to the extent that the decision was based on his prior record. He asserts that the Board granted parole to inmate Dennis Councle McGautha, who was convicted of killing a storekeeper and had a prior conviction. Petitioner also contends that there was no reliable evidence in the record to support the Board's finding that he lacked realistic parole plans. He states that he has letters from family members offering him a place to stay and help in finding employment. Petitioner contends that the Board failed to apply the suitability standard correctly in his case. (Id. at 9.)

1    Petitioner asserts that the issue in this case is whether there is any reliable
2 evidence in the record supporting the Board's finding of unsuitability for parole on the ground
3 that he would pose an unreasonable risk of danger to society or a threat to public safety if
4 released. He contends that there is no such evidence and that the Board's decision finding him
5 unsuitable was arbitrary and violated his Fourteenth Amendment rights. (Id. at 10-11.)

6    Petitioner argues that the parole commissioners on his panel and former governor
7 Gray Davis were biased against him in that all of them were predisposed to deny parole to any
8 inmate sentenced to a life term. Petitioner asserts that the former governor had a no-parole
9 policy that influenced the panel to find him not suitable for parole. Petitioner grounds his
10 contention of bias on newspaper articles and comments made by a parole commissioner to
11 another inmate serving a life term. Petitioner suggests that the court must intervene or the
12 governor will continue to force the Board to violate petitioner's rights to equal protection of the
13 laws. (Id. at 12-13.)

14    Petitioner offers copies of the Board's decision on appeal (Appendix A), the order
15 of the California Supreme Court denying his state habeas petition (Appendix B), selected pages
16 from the transcript of the November 30, 1990 parole consideration hearing for Billy McIlvain
17 (Appendix C), the 1999 mental health evaluation of petitioner by Dr. Beermann (Appendix D),
18 the complete transcript of petitioner's August 3, 2000 parole consideration hearing (Appendix E),
19 petitioner's classification score sheet as of March 15, 1982 (Appendix F), six newspaper articles
20 (Appendix G), and selected pages from the transcript of the December 15, 1999 parole
21 consideration hearing for John Montue (Appendix H).

22                              RESPONDENTS' ANSWER

23    Respondents make the following assertions concerning petitioner's parole
24 suitability hearing on August 3, 2000: petitioner was present with counsel and presented
25 evidence; the Board considered the circumstances of petitioner's commitment offense, pre-
26 commitment factors, post-commitment factors, parole plans, and other case factors; the Board

1    invited petitioner to respond to the evidence presented, and he did so; both petitioner and his
2    attorney made closing statements; and the Board informed petitioner verbally and in writing of its
3    decision and stated its reasons for that decision on the record in petitioner's presence.
4    Respondents deny petitioner's allegations of an entitlement to a parole date and further deny any
5    violation of petitioner's rights, whether administrative, statutory, or constitutional.

6           Respondents assert that the district court may grant a writ of habeas corpus only
7    on the basis of some transgression of federal law binding on the state courts and only if the state
8    court adjudication of the claims resulted in a decision contrary to or involving an unreasonable
9    application of clearly established federal law as determined by the Supreme Court, or a decision
10   based on an unreasonable determination of the facts in light of the evidence presented in the state
11   court proceeding.  Respondents cite well established authority for the proposition that a prisoner
12   has no constitutional right to be released from prison before his sentence expires but may be
13   entitled to some measure of due process where state statutes or regulations create a liberty
14   interest in parole release.  Respondents cite additional authorities providing that where a prisoner
15   has a liberty interest in parole release he must be given an opportunity to be heard and a
16   statement of reasons if parole is denied.  Respondents assert that a parole board's decision
17   satisfies due process requirements if some evidence possessing some indicia of reliability
18   supports the decision to deny parole.

19          Respondents set forth the requirements of California Penal Code §§ 3041.5 and
20   3041.7, which provide that (1) eligible prisoners will be considered for parole at a suitability
21   hearing before a panel of state officials, (2) prisoners are entitled to be present at the hearing and
22   to speak and offer evidence on their own behalf, (3) reasons for any findings made at the hearing
23   must be stated on the record, (4) prisoners may request and receive a transcript of the
24   proceedings, and (5) prisoners serving a life sentence are entitled to be represented by counsel at
25   the hearing.  The board "shall set a release date unless it determines that the gravity of the current
26   convicted offense or offenses, or the timing and gravity of current or past convicted offense or

offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code § 3041(b). In determining whether a prisoner will pose an unreasonable risk of danger to society if released, the board may consider all relevant information, as described in detail in the regulations, including whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and whether "[t]he prisoner has engaged in serious misconduct in prison or jail." Cal. Code of Regs., tit. 15, § 2402.

Respondents contend that the petitioner in this case has not alleged that he was denied any of the required procedures at his August 3, 2000 parole suitability hearing and that he received all the process he was due. Respondents argue that the evidence produced at the hearing meets the applicable standards and supports the Board's determination that petitioner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.

Respondents summarize the record and the Board's findings as follows: the murder committed by petitioner was carried out in an especially cruel and callous manner that demonstrated an exceptionally callous disregard for human suffering, and the motive for the crime was very trivial in relation to the offense; petitioner broke into the apartment of the 73-year-old victim and beat her, causing severe injury that resulted in her death; she died from manual strangulation; she had broken ribs, her spine was fractured, her front teeth were knocked out, and she had a torn vagina; petitioner had on previous occasions inflicted or attempted to inflict serious injury on a victim; he had a record of violence or assaultive behavior and an escalating pattern of criminal conduct; he failed to profit from society's previous attempts to correct his criminality, including a juvenile commitment in Tennessee, two prior prison terms in Tennessee, adult probation, and parole; his unstable social history and prior criminality included leaving school before he completed his education; his prior convictions in Tennessee were for burglaries and petty larceny; after coming to California in 1972, he was convicted of intoxication,

6

commercial burglary, residential burglary, attempted rape, and battery; the Board found that petitioner had not sufficiently participated in beneficial self-help programs and lacked realistic parole plans because he did not have viable residential plans in his last county of legal residence and had no acceptable employment plans; both the Los Angeles County District Attorney's Office and the Long Beach Police Department opposed parole; the Board found that petitioner needed therapy in order to face, discuss, understand, and cope with stress in a non-destructive manner; the Board found that petitioner continued to be unpredictable and a threat to others; the Board considered several positive factors of petitioner's prison behavior and commended him but found that the positive aspects of petitioner's behavior did not outweigh the factors of unsuitability.  (Answer at 5-6 (citing Pet., App. E at 43-45).)

Respondents conclude that, on this record, the state courts' adjudication of petitioner's claims did not result in a decision contrary to or involving an unreasonable application of clearly established Federal law as determined by the Supreme Court.  Respondents argue that the state court decisions were correct because the Board's decision satisfies procedural due process requirements and there is some evidence to support the Board's decision.

### PETITIONER'S TRAVERSE

Petitioner reiterates that his due process rights were violated and contends that the state courts deprived him of federal rights.  He argues that the Due Process Clause prohibits arbitrary decisions and that the Board's decision in 2000 was arbitrary.  He concedes that he was present at the hearing with counsel, that he presented evidence, that the Board considered the circumstances of his commitment offense as well as pre-commitment factors and post-commitment factors, and that the Board stated its reasons on the record, but he denies that he received all the process he was due.  Petitioner argues that the Board supported its decision solely on the basis of the gravity of his offense, his prior criminal history, and its contention that the 1999 psychiatric report was not supportive of release and did not properly balance and assess the factors it considered.

1    Petitioner asserts that he has received only two CDC 115's since 1979, that he has
2    been disciplinary-free for twelve years, and that he continues to demonstrate exemplary behavior
3    and evidence of rehabilitation. He contends that his 1999 psychiatric report is totally supportive
4    of release, reflects petitioner's remorse for his crime, and clearly states that petitioner does not
5    have a mental problem. Citing McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002), and
6    Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), petitioner argues that the nature of his offense,
7    his prior criminal history, and his psychiatric reports are never going to change and that the
8    Board's continuous reliance on these unchanging factors to deny parole in 1983, 1984, 1985,
9    1986, 1989, 1991, 1993, 1995, 1997, and 2000 is contrary to the rehabilitative goals of the parole
10   scheme. Petitioner asserts that the 1999 psychiatric report does not state that he needs therapy
11   and that California Penal Code § 5011 prohibits the Board from requiring an admission of guilt
12   as a condition of setting a parole date. Petitioner also asserts that his sister has offered him a
13   place to stay upon his release. Petitioner urges the court to grant his petition on the ground that
14   his due process rights were violated.

## ANALYSIS

A writ of habeas corpus is available under 28 U.S.C. § 2254 "only on the basis of some transgression of federal law binding on the state courts." Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Federal habeas relief is not available for errors in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).

Section 2254 as amended in 1996 sets forth the following standards of review to be applied by federal courts to state court decisions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

8

      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). See Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

      In the present case, the California Supreme Court denied review of petitioner's claims in an order that reads as follows: "Petition for writ of habeas corpus is DENIED." (Pet., App. B.) This order of the state's highest court is "an unexplained order," i.e., "an order whose text or accompanying opinion does not disclose the reason for the judgment." Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991). When confronted with a state court's unexplained order, the federal court applies the following presumption: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Id. at 803. In applying the look-through presumption, unexplained orders are given no effect. Id. at 804.

      Here, there was no reasoned state judgment by any court. However, the record does include the decision on appeal by the Board of Prison Terms Office of Policy and Appeals. (Pet., App. A.) This court will look through the California Supreme Court's unexplained order to the Board's decision on appeal in order to determine whether the state's adjudication of petitioner's federal claims satisfies the standards set forth in § 2254.

I. Due Process

      The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives any person of life, liberty, or property without due process of law. A person alleging a violation of his right to procedural due process must establish that he was deprived of an interest cognizable under the Due Process Clause and that the procedures attendant upon that deprivation
/////

1  were not constitutionally sufficient.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S.
2  454, 459-60 (1989); Board of Regents v. Roth, 408 U.S. 564, 571 (1972).

3  In the parole context, a petitioner alleging due process claims must demonstrate
4  that he has a protected liberty interest in parole and show that he was denied one or more of the
5  procedural protections that must be provided, i.e., the process due when a liberty interest is at
6  stake.  The Ninth Circuit has determined that "California's parole scheme gives rise to a
7  cognizable liberty interest in release on parole."  McQuillion v. Duncan, 306 F.3d 895, 902 (9th
8  Cir. 2002).  Because parole-related decisions are not part of the criminal prosecution, the full
9  panoply of rights due a defendant in criminal proceedings is not constitutionally mandated.
10 Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  Due process is satisfied
11 in the context of a hearing to set a parole date where the prisoner is afforded notice of the
12 hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the
13 denial.  Id. (citing Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1,
14 16 (1979)).  See Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural
15 process due in cases involving parole issues).  Violation of state mandated procedures will
16 constitute a due process violation only if the violation causes a fundamentally unfair result.
17 Estelle, 502 U.S. at 65

18 In California, the setting of a parole date for a state prisoner is conditioned on a
19 finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  As long
20 as the state's decision regarding parole suitability is supported by "some evidence," the federal
21 court must find that the decision complies with the requirements of federal due process.  Morales
22 v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds,
23 514 U.S. 499 (1995); Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992) (per curiam).  The
24 "some evidence" standard is met if there is evidence from which the conclusion of the
25 administrative tribunal can be deduced, Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir.
26 1986), and the decision bears some indicia of reliability, Jancsek, 833 F.2d at 1390; Perveler, 974

F.2d at 1134. The "some evidence" standard is minimally stringent, and a decision must be upheld if there is any evidence in the record that could support the conclusion reached. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Superintendent v. Hill, 472 U.S. 445, 455-56 (1985), and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. Id.

In the present case, the Board announced its decision on the record, stating that it found petitioner not suitable for parole because he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. (Pet., App. E at 43.) The Board stated that petitioner's "commitment offense was carried out in an especially cruel and callous manner, in a manner which demonstrates an exceptionally callous disregard for human suffering" and that "the motive for the crime was very trivial in relation to the offense." (Id.) The Board cited the following facts: petitioner broke into the apartment of a 73-year-old woman and beat her, causing severe injury that resulted in death from manual strangulation; the victim had broken ribs, her spine was fractured, her front teeth were knocked out, she had bruises, and she had a torn vagina; petitioner had on previous occasions inflicted or attempted to inflict serious injury on a victim; petitioner had a record of violence or assaultive behavior and an escalating pattern of criminal conduct; he had failed to profit from previous attempts to correct his criminality; he had an unstable social history; he left school before completing his education; his prior convictions were for burglaries, petty larceny, intoxication, commercial burglary, residential burglary, attempted rape, and battery; he had not sufficiently participated in beneficial self-help programs; he lacked realistic parole plans in his last county of residence, although he wanted to live with one of his sisters in that county, and he did not have specific employment plans. (Id. at 43-44.) The Board found that petitioner "continues to be unpredictable and a threat to others" due to his failure to

11

1  make progress in "understand[ing] and cop[ing] with stress in a non-destructive manner." (Id. at
2  45.) The Board found that petitioner had not completed the programming essential to his
3  adjustment, that he needed more time to gain such programming, and that a longer period of
4  observation was required. (Id. at 46.)
5           The Board's findings concerning petitioner's commitment offense, his record of
6  violence or assaultive behavior, and his escalating pattern of criminal conduct are supported by
7  petitioner's own account of the commitment offense and his undisputed criminal history, which
8  petitioner himself described as a "very bad history." (Id. at 5-20.) Petitioner entered the victim's
9  residence through a window after knocking on the apartment door, getting no answer, and
10 concluding the apartment was empty. (Id. at 5-6.) In the apartment, he moved about in the dark,
11 gathering up anything he could find that he thought he could sell, such as radios and televisions.
12 (Id. at 6.) After he had picked the things he was going to take, he saw a figure, felt something cut
13 his finger, and began to struggle with the figure. (Id. at 6-7.) Petitioner stated that he never
14 realized he was "scuffling" with an elderly woman, that he was defending himself and thought he
15 had only knocked the person out, that he could not recall how the victim came to be on the bed
16 but thought the room was "wrecked" from their scuffling, that he did not rape her and did not
17 know until he was arrested that the person he had struggled with was a woman, and that "after all
18 the scuffling was over," he left, running out through the alley and taking the property he had
19 already packed up. (Id. at 7-11.) Petitioner's criminal record included a conviction for residential
20 burglary, the attempted rape of a 41-year-old paraplegic woman in 1973, and a battery in 1976.
21 (Id. at 18-19.)
22          The Board's findings concerning the inadequacy of petitioner's parole plans are
23 also supported by the following evidence in the record: petitioner offered a letter from his older
24 sister, but her letter does not state that petitioner can live with her after he paroles; petitioner
25 offered a letter from his younger sister, but her letter states only that she and her sister will help
26 petitioner get a job and find an apartment; petitioner wants to work in a bakery but has not taken

any steps to find a job in the county where he will parole. (Id. at 30-34.) The Board advised petitioner to obtain and include in his prison central file a letter in which one of his sisters verifies that she will provide him with a residence when he paroles. (Id. at 31 & 33.) The Board also suggested that petitioner ask his sisters to send him want ads from Los Angeles area newspapers and that petitioner send letters to potential employers and collect any responses he receives. (Id. at 33-34.)

The Board's findings concerning petitioner's insufficient participation in beneficial self-help programs, continued unpredictability, lack of progress in understanding and coping with stress in a non-destructive manner, and risk of danger to society are supported by a 1996 psychological evaluation in which Dr. Kitt found alcohol abuse in institutional remission, borderline intellectual functioning, a personality disorder with inadequate and anti-social traits, a predisposition to repeated criminal activity due to limited intelligence and substance abuse, and psychiatric improvement in prison due to enforced sobriety resulting from external controls. (Id. at 27-28.) Dr. Kitt's opinion in 1996 was that in a less controlled setting, such as a return to the community, petitioner was "likely to deteriorate because of [his] potential for substance abuse relapse in conjunction with limited intellectual ability and minimal insight." (Id. at 28.) In contrast, Dr. Beermann's report lacks depth, and one of the commissioners commented that there was "quite a change" between Dr. Kitt's report in 1996 and Dr. Beermann's report in 1999.[2] (Id. at 28.) However, Dr. Beermann's report is consistent with Dr. Kitt's in the conclusion that petitioner "does not pose more than a normal risk factor <u>in a controlled environment</u>." (Pet., App. D at 3.) In a report dated February 2000, a correctional counselor states that petitioner needs one-on-one therapy to come to an understanding of his problems and the reasons he committed rapes or attempted rapes. (Pet., App. E at 24.) The Board noted that petitioner's 1991 rule violation

---

[2] The deputy district attorney who appeared at the hearing commented that she had compared the findings in petitioner's Beermann report with the findings in the reports offered at the two previous parole consideration hearings that day and found them virtually identical, with only the names changed. (Pet., App. E at 38.)

report was for possession of inmate manufactured alcohol.  (Id.)  The record before the Board included a letter from a sergeant in the Long Beach Police Department, reporting that petitioner attempted to avoid apprehension at the time of his arrest by kicking and slamming shut a door, crushing his parole agent's hand, and that petitioner subsequently displayed a complete lack of concern for his actions; the sergeant opposed parole for petitioner on the ground that petitioner has shown he is a threat to the community and will continue to commit similar crimes.  (Id. at 35.)  A deputy district attorney from the Los Angeles County District Attorney's Office appeared at the hearing to oppose parole for petitioner.  She stated that she "ha[d] hardly seen in the last eight years a more violent inmate than this one," that petitioner's prior prison commitments did not teach him anything, as shown by his attempted rape of a paraplegic woman, and that petitioner's testimony that the murder victim's house was the first one he attempted to burglarize that night was contradicted by the fact that an 84-year-old woman had called the police that night after she saw a prowler looking in her bathroom window.  (Id. at 37-38.)  At the time of the hearing in 2000, petitioner had no recent involvement in AA, no additional vocational training and no additional academic course work since the previous parole consideration hearing, although he was on a waiting list for NA and on a list for janitorial training.  (Id. at 24-25 & 28-29.)  The Board advised petitioner to make sure his GED certificate is in his central file, to remain disciplinary-free, to upgrade vocationally by learning another trade, if possible, to continue to upgrade educationally, and to participate in self-help programs.  (Id. at 26 & 46-47.)[3]

On appeal, petitioner contended that the Board violated his due process rights by refusing to follow the psychologist's recommendations and by failing to set a parole date based on the psychologist's report.  Petitioner argued that he does not pose a threat of violence if released,

---

[3] Because of this other evidence relied upon by the Board, this is not a case where petitioner's due process rights are implicated by repeated parole denials based upon continued reliance on the unchanging factors of the commitment offense and conduct prior to imprisonment in the face of a positive psychological report and substantial evidence of remorse and rehabilitation.  See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003).

that nothing in his recent psychological evaluation is not supportive of release, that the Board failed to consider the evaluation, and that the Board failed to consider factors tending to show suitability for parole, such as petitioner's remorse and his age. (Pet., App. A.) The decision on appeal addresses petitioner's contentions concerning the psychological report as follows:

> The prisoner contends that the Board refuses to follow psychological recommendations. The Appeals Unit disagrees. The hearing panel, when it reviews a psychiatric report, uses the information in that report to determine its view of whether the report is totally supportive of release from a psychiatric standpoint and as part of an overall picture of whether the prisoner is ready to be given a release date. The hearing panel may find current statements in the report more important to their deliberations than the conclusions. The conclusions of the psychiatrist/psychologist, though important, are not binding on the panel since it has the power to grant parole, not the psychiatrist. The conclusions of the hearing panel regarding the psychiatric readiness of the prisoner could reasonably be drawn from the psychiatric and psychological evidence available to the hearing panel.

(Id.)

Applying the minimally stringent "some evidence" standard to the record before the court, the undersigned finds that there is reliable evidence in the record supporting the Board's initial decision and consequently the decision on appeal and the denial of habeas corpus relief. Although petitioner points to some evidence tending to indicate that he may not pose a threat to society if released, the Board was not obligated to prefer that evidence to the evidence it chose to rely upon. For these reasons, the state court's adjudication of petitioner's due process claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The decision regarding petitioner's parole suitability is supported by "some evidence" and therefore complies with the requirements of federal due process. Petitioner is not entitled to federal habeas relief on his due process claims.

/////

II. Equal Protection

A petitioner raising an equal protection claim in the parole context must demonstrate that he was treated differently from other similarly situated prisoners and that the Board lacked a rational basis for its decision.  See McGinnis v. Royster, 410 U.S. 263, 269-70 (1973) (reviewing differences in release dates under rational basis test and balancing the state's efforts to ensure that prisoners are sufficiently prepared for release to protect public safety, on the one hand, with the prisoner's interest in release, on the other hand).

Petitioner's allegations and evidence concerning other prisoners who were granted parole dates do not demonstrate that he was treated differently from similarly situated prisoners. Petitioner has provided only selected pages from the Board's decision in the McIlvain case, but even those pages are sufficient to show that inmate McIlvain and petitioner were not similarly situated: McIlvain was a former police officer who "stopped a lot of violence and disorder" while he was in prison, he saved the life of a staff member who was choking and saved the lives of prisoners on two separate occasions, prior to his commission of a murder he and his family had been subjected to a long series of threats and attempts on his life by a gang, he was ambushed and fired upon while performing his duties as a police officer and was seriously injured, resulting in his retirement on disability, the victim of his crime was a member of the gang that terrorized him and his family, he committed his crime as a result of significant stress in his life, he lacked any previous criminal history, he had a stable social history and a reasonably stable relationship with others prior to and after his reception in prison, while in prison he enhanced his ability to function within the law upon release, he completed a correspondence course in professional investigation and participated in a correspondence nurse assistant program, he performed in an excellent manner as a prison clerk and received numerous laudatory chronos, he participated in a one-on-one therapy program for stress reduction, he had a reduced probability of recidivism due to his maturation and increased understanding, he had realistic parole plans that included a job offer, he maintained close ties with family and friends while in prison by means of letters and visits, he

maintained positive institutional behavior throughout his 14 years of incarceration, he showed genuine signs of remorse, he had numerous letters supporting his release, most of them from the law enforcement community, and he had multiple favorable psychiatric reports concluding that his violence potential is well below that of the average inmate, he is emotionally stable, he has no psychiatric condition that would benefit from mental health treatment, and he should be able to function as a responsible citizen following his release.  (Pet., App. C at 66-71.)  Moreover, petitioner's bare allegation that the Board granted parole to inmate McGautha despite the fact that McGautha had a prior conviction is inadequate to demonstrate that petitioner and McGautha were similarly situated.

Petitioner has not demonstrated that the Board violated his equal protection rights by applying a different suitability standard to him.  Petitioner is not entitled to federal habeas relief on his equal protection claims.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied and that this action be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file and serve written objections with the court.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be filed and served within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 29, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
will1595.157